SCHULTZE v. GOODSTEIN et al.

(Supreme Court, Appellate Division, First Department.   April 24, 1903.)

1. CONTRACTOR'S LIEN—DEPARTURE FROM TERMS OF CONTRACT—ARCHITECT'S CERTIFICATE—EFFECT.
    An architect's certificate that the contractor has complied with the terms of a building contract, and is entitled to payment, is conclusive unless impeached for fraud in obtaining it.

2. SAME—BURDEN OF PROOF.
    The burden of showing that an architect's certificate was obtained by the contractor by fraud is on the owner.

3. SAME—SUFFICIENCY OF EVIDENCE.
    Evidence in a suit to foreclose a contractor's lien examined, and *held* to sustain a finding that the architect's certificate of compliance by the contractor with the terms of the contract was fraudulently obtained.

4. SAME—APPEAL—SEARCH FOR ERRORS.
    Where a suit to foreclose a contractor's lien is successfully defended on the ground that the contractor substituted cheaper materials, and there is abundant evidence which would have supported a finding that the difference in cost was slight, and the substitution immaterial or beneficial, and it is conceded that the owner had the full benefit of all material furnished, the Supreme Court, on appeal, will examine the record with care, to see that nothing occurred on the trial to the contractor's prejudice.

5. SAME—ADMISSIBILITY OF EVIDENCE.
    A suit to foreclose a contractor's lien was defended on the ground that in doing the plumbing he had substituted inferior material, and the owner testified that he had been compelled to pay out a considerable sum for repairs thereto, and had suffered much damage therefrom. *Held*, that the contractor's testimony as to what would be the proper

---

¶ 1. See Contracts, vol. 11, Cent. Dig. § 1331.

cost of keeping the plumbing in repair was admissible, both as directly bearing on the issues involved and to impeach the owner.

6. SAME.

The testimony of an expert plumber as to whether 1½-inch pipe was preferable, under laundry tubs, to 2-inch pipe, as called for by the contract, was admissible, the issue having been raised by the owner, and it appearing that 1½-inch pipe conformed to the regulations of the building department.

7. SAME.

The expert's evidence as to whether he knew of any case where earthen sewer pipe would be preferable to iron was also admissible; the contractor seeking to excuse the substitution of earthen pipe for the iron pipe called for by the contract on the ground that the condition of the soil necessitated it.

8. SAME—DEFENDANT LIENOR—MOTION FOR JUDGMENT—NECESSITY—IMPROPER FORM—EFFECT.

Code Civ. Proc. § 3403, relative to the foreclosure of mechanics' liens, provides that the court may adjust and determine the equities of all parties and the order of priority of different liens, and determine all issues raised by defense or counterclaim. *Held*, that a motion by a defendant lienor for judgment against the owner was unnecessary; and therefore the fact that he moved for judgment in favor of the plaintiff contractor for the full amount of his lien, and that out of such sum be carved his own interest, did not deprive him of such judgment as he was entitled to.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by Theodore Schultze against Isaac Goodstein and Jacob Deng. From a judgment in favor of Goodstein, plaintiff and defendant Deng appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Saul Bernstein, for appellant Schultze.

Joseph S. Menline, for appellant Deng.

Joseph H. Hayes, for respondent.

HATCH, J.   This is an action brought to foreclose a mechanic's lien filed by the assignee of the contractor, Manneschmidt. The contract provided for furnishing plumbing work upon premises owned by the defendant Goodstein.   There was also a lien filed by the defendant Deng for materials furnished, and also by the Alberene Stone Company.   Interest in the latter lien was assigned to Deng, and he was made a party defendant in the action.   These two liens amounted to about the sum of $1,364, with interest thereon.   No question is raised but that the materials represented by the liens owned by Deng were furnished to the building; that the defendant Goodstein received all the benefits arising therefrom; that the materials thus furnished answered in all respects to the requirements of the contract; and that Deng has not been paid therefor.   The issue litigated upon the trial related solely to the performance by the contractor of his contract; it being claimed that he did not substantially perform the same, but, on the contrary, was guilty of a willful and fraudulent departure from the plans and specifications to such an extent, and of so material a character that his assignee was not entitled to enforce the lien.   The particulars in which it was claimed that there was substantial de-

parture from the terms of the contract were that he had substituted earthen for iron sewer pipe; had failed to remove rock obstruction in the street, and thereby give a proper pitch to the sewer, which resulted in flooding the basement, and causing the same to become damp and unhealthy; that he utilized old sewer connections connected with buildings formerly standing upon the land, which had been torn down to make place for the new building; that he substituted 1½-inch pipe for 2-inch pipe in the laundry tubs and sinks, and furnished a thinner and inferior pipe in the closet system. All of the material which was the subject of contest upon the trial was put into the building under the supervision and direction of an architect. After the completion of the plumbing work involving the disputed items, the architect gave to the contractor a certificate that the work was completed in accordance with the terms of the contract, and that the contractor was entitled to payment therefor. Presumptively, therefore, the plaintiff was entitled to enforce the lien which he had filed. He could only be defeated by establishing that the certificate which entitled him to payment therefor had been fraudulently obtained, and that the substitutions which had been made, or departures from the contract, were substantial, and were not authorized by or known to the architect at the time when he gave the certificate. Under this state of the case, the burden rested upon the defendant Goodstein to show fraud in obtaining the certificate which entitled the contractor to payment. This he sought to do by giving proof tending to show that the architect was not aware, when he delivered the certificate, that the changes had been made, and that the earthen pipe was put into the trench surreptitiously and hastily covered up before the architect had an opportunity to inspect the same. The architect testified that he had never authorized the particular departures complained of, and did not know at the time when the certificate was given that any such change had been made. In further support of the claim that the changes were substantial in character and worked damage to the defendant Goodstein, the latter and his son were called, and gave testimony tending to show that the sewer pipe, as laid, did not properly carry off the sewage; that it was forced back into the cellars of the building, and flooded the same, rendering them damp and uninhabitable for the tenants and janitors in the building; that he was practically unable to keep a janitor, having had about twenty in eight months; that he had trouble over the entire house, and had expended at least $300 for temporary repairs to the plumbing. The testimony to show that earthen sewer pipe had been surreptitiously placed in the trench and hastily covered up came from a witness who was bitter in his hostility to the contractor, and whose testimony is very seriously shaken by reason thereof, and also in many respects by its inherent improbability. In effect, he stated that the contractor deliberately and with fraudulent design brought upon the ground iron pipe and also earthen sewer pipe; that he concealed the latter, and, when there was no opportunity for inspection, put the same in the trench, and hastily covered it up. This testimony was met by a denial on the part of the contractor, who claimed and testified that, while he substituted earthen pipe for some of the sewer pipe leading from the building to the main sewer, the

reason therefor was because of an old sewer on the premises of iron pipe, which, when taken up, was found to be rusted to a mere shell, and the inside nearly filled with rust, this condition being due to the character of the soil; that, when this discovery was made, the architect directed the substitution of the earthen pipes, with a deduction to be made for the difference in price. He denied the surreptitious substitution of the earthen pipe, and testified that it was done openly, and was inspected before being covered up. Upon this subject he was corroborated by several of the workmen upon the premises and by the sewer inspector employed by the city, who testified that the sewers were open and in process of construction for about two weeks; that there was no attempt to conceal the earthen pipe; that it was lying around on the top of the ground for that period, and was in the open sewers for some time, waiting for the inspector, who subsequently examined it and certified that it was properly laid. It is clearly seen, therefore, that the evidence on the part of the contractor tended to overthrow the testimony of the hostile witness, and upon this subject the proof preponderates in favor of the contractor that the tile sewer pipe was laid openly and without any attempt to conceal it from observation. This seems to be clearly established by the testimony of the inspector, who was in no respect contradicted, except by the hostile witness, and he does not say that the inspector did not examine it. In addition to this, it appears that while the defendant Goodstein and his son had given evidence tending to show that the basements were uninhabitable by reason of the overflow setting back from the sewer, and that the cellars were damp and wet, they were directly contradicted by two janitors employed in the buildings, one of whom testified that he had been janitor for about six months; that he was acquainted with the janitors in all of the five houses; that they had been there for four or five months, and that no janitor had been changed in the last few months; that there was no water overflow from the sewer, except once, when it was stopped up with a little grease in the pipe, and that caused a little water in the cellar. This janitor testified that he was a plumber, but that he had to do very little plumbing work about the apartments, and such as he did was limited to the putting in of a washer when it leaked; that twice in six months, by reason of grease getting into the pipes, there had been a little water, and that this was the only overflow he knew of, and he made no complaint to the defendant Goodstein. This was the janitor of No. 344. The janitor from No. 346–348 was called, and testified that he had been janitor for 5½ months. He stated that the water had backed up twice for the reason that the pipe had filled with grease, and had to be cleaned out; that he cleaned it; that it was in good condition then; that the tenants made no complaint, or very little, about the plumbing, and that the house was pretty well occupied all the time, and that no tenants had moved because of the condition of the apartments in this respect. This testimony was in direct contradiction, in every feature of it, to that given by the defendant Goodstein and his son, who sought to convey the impression that the house was damp and unhealthy, and that tenants moved out on account of the condition of the plumbing. No attempt whatever was made by the defendant

Goodstein to contradict the testimony of these janitors. They were then in his employ, and naturally had no predilection in favor of the contractor. Had the case rested upon this testimony alone, we should not hesitate to reverse this judgment as being against the weight of the evidence. The architects of the defendant, however, testified that they never authorized the changes in which there were departures from the contract, and did not know when they gave the certificate that such changes had been made. By reason of this testimony, a question was presented which authorized the court to make the finding which it did, and furnishes a basis upon which the same may rest.

The testimony was also conflicting as to the difference in cost between the material for which the contract called and that which was substituted. Testimony upon the part of the defendant showed such difference to be a substantial sum; while the testimony on the part of the contractor showed it to be slight, and that the substituted material would perform its office as well, and the earthen pipe better, than that for which the contract called. In view of this condition of the proof, it is clear that a finding in favor of the plaintiff would have had abundant evidence to sustain it, and, as the defendant Goodstein confessedly has had the full benefit of all of the material furnished to the building, he ought not to escape payment therefor, unless for a controlling reason. In view of this condition of the case, we are called upon to examine this record with care in order to see that nothing has happened in the course of the trial to the prejudice of the plaintiff.

The contractor was asked, while upon the stand, what would be the true and reasonable value to keep the plumbing in such a house in good repair for one year; also, what would be the proper cost to keep the plumbing work in repair as done by him in these houses; and also what it would cost to keep such plumbing in repair for one year after they were completed. These questions were objected to as immaterial and incompetent, and the evidence was excluded, to which an exception was taken. This testimony was offered in answer to the claim made by the defendant Goodstein that he had been compelled to pay out a considerable sum of money for repairs to the plumbing, and had suffered much damage on account thereof. The tendency of this testimony was to show that the work was improperly performed, and that the defendant Goodstein had suffered damage thereby; thus tending to support the claim of fraud in obtaining the architect's certificate. The testimony offered by the plaintiff sought, in effect, to show that the plumbing was properly done; that the claim of large expenditures by Goodstein for keeping it in repair was unfounded in fact; and that its condition was such that simple, if any, repairs were needed upon it during the period that the defendant Goodstein claimed to have made the expenditures. This bore directly upon the issue involved, and was in direct answer to the claims set forth by Goodstein. In addition to this, the questions, if answered, would have had a direct tendency to contradict and impeach the testimony of Goodstein and his son. It was admissible for this purpose, if not for any other; but it bore with more or less force upon the issues involved, and was therefore competent.

John Cadoo, an expert plumber, was called as a witness, and among other things was asked if, in his estimation, pipe of the diameter of $1\frac{1}{2}$ inches was preferable under the laundry tubs than one of 2 inches; also if he knew of any case where earthen pipe would be preferred over sewer pipe made of iron. The architect for the defendant Goodstein had testified that the pipe which was used was not as good as the other, and gave reasons therefor. Counsel for the defendant Goodstein also cross-examined the witnesses upon the part of the plaintiff at considerable length bearing upon such question. It was conceded by the defendant that the $1\frac{1}{2}$-inch pipe conformed to the regulations of the building department. He was asked to concede that the work, as done, was in accordance with those regulations, as modified. This he refused to admit, but such fact was subsequently established. The testimony offered to be given under the first question became material, therefore, for the reason that Goodstein had put such question in issue upon his own proof, and had litigated it through the trial. If the pipe conformed to the building regulations, as conceded, then whether it answered the requirements equally as well as that for which the contract called was material, as was also its bearing upon the subject as to whether there was a substantial departure in this respect from the contract. Goodstein claimed that it did not, and offered proof in support of such theory. The plaintiff sought to controvert that testimony by this question. It bore directly thereon, and the plaintiff became entitled to give the proof which the question sought to elicit. The exclusion of this testimony was therefore error.

As to the second question, the plaintiff's testimony tended to show that the sole reason for the change of the sewer pipe from iron to earthen was due to the condition of the soil, which rusted the iron pipe very rapidly, and that it was for this reason that the earthen pipe was substituted. If it was the fact that, from the conditions disclosed, iron pipe would not be suitable, or as good as the earthen pipe, to be laid in that soil, the plaintiff had the right to show it, and, if it had appeared that under such conditions earthen pipe would be the best to place in such soil, it would go far to corroborate the plaintiff in his claim that this change was authorized, as it would show a reason therefor, and render probable his story. The evidence sought to be elicited was therefore directly corroborative of the plaintiff's claim, and it was therefore error to exclude testimony offered for such purpose. The substantive part of the whole claim upon the part of Goodstein rested in the substitution of the earthen pipe for the iron. Had such substitution been authorized, the plaintiff would doubtless have succeeded. The error, therefore, in excluding this testimony, which bore directly upon such issue, was material, and was distinctly prejudicial to the plaintiff.

It is said that the defendant Deng is entitled to no relief upon this appeal for the reason that he did not move for judgment in his favor against the defendant Goodstein. His answer sets up the facts out of which his lien arose. He demanded judgment that he have a lien upon the premises superior to the lien of the plaintiff, and also for such other or further relief as he might be entitled to. Under his answer, he was entitled to such judgment as the proofs warranted

(Code Civ. Proc. § 3403); and this whether he moved formally for judgment or not. It appears that what he did do was to move, through the attorney for the plaintiff, for judgment in favor of the plaintiff for the full amount of his lien, and that out of such sum be carved his interest. By making his motion in this form, he did not deprive himself of such judgment as he was entitled to, and it would have been the duty of the court, if it had found in favor of such lien, to direct the appropriate judgment, even though it was not formally asked by the motion. The defendant Goodstein is not liable for a greater sum, if at all, than the unpaid amount of the contract. This, however, does not deprive Deng of his judgment, if he shows himself entitled thereto.

For reasons already assigned, we conclude that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

O'BRIEN and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., dissents.

INGRAHAM, J. (dissenting). I think the evidence conclusively shows that the plaintiff never fulfilled his contract, and was not entitled to recover the amount that the defendant Goodstein agreed to pay upon its performance. It is conceded that the plaintiff failed to comply with his contract. Goodstein had contracted for iron pipes, and the plaintiff had agreed to furnish him with iron pipes. Whether the earthernware pipes were just as good, Goodstein had a right to say that he required iron pipes and would pay for nothing but iron pipes, and until the plaintiff complied with his contract and furnished iron pipes he was not entitled to enforce payment of what was to be paid when iron pipes were furnished. It is not disputed but that there was evidence to sustain the finding below—that the plaintiff had not complied with his contract, and that compliance therewith was not waived by the defendant or his agent; and in view of that finding, sustained as it is by the evidence, I am at a loss to see upon what principle Goodstein could be held to be liable to the plaintiff, or to those furnishing him with materials used by him in doing the work, which he did not complete, and for which he is not entitled to recover. The testimony excluded seems to me, upon this crucial question in the case, entirely immaterial, and does not justify a reversal of the judgment. I therefore dissent.